**SHER TREMONTE LLP**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/5/23

June 27, 2023

**VIA ECF**

Hon. Kimba M. Wood
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**MEMO ENDORSED**

Re:   *United States v. Raheem Mack*, 16-cr-311 (KMW)

Dear Judge Wood:

    We represent Raheem Mack. In advance of the court conference scheduled for July 5, 2023, we write respectfully to request early termination of Mr. Mack's supervised release, pursuant to 18 U.S.C. § 3583(e)(1), based on his successful reintegration into society. ] Granted

    Mr. Mack is not the same person today as he was when he first appeared before Your Honor in May 2016. During his incarceration, he successfully completed two substance abuse treatment programs, dedicated himself to furthering his education by studying diligently for the GED exam and reading as many books as he could, and used the time to reflect upon his past and future. He eagerly awaited the day of his release, determined to live a better life, and never to reoffend. Upon his release from incarceration in November 2020,[1] Mr. Mack began caring for his disabled mother, secured gainful employment in the construction industry, and had a son with his long-term girlfriend. He has served more than half of his four-year term of supervised release, during which he has complied with all conditions of his supervised release and has dutifully attended regular check-ins with the Court.[2] Mr. Mack has shown that further supervision is not needed to ensure his continued progress. For these reasons, set forth in more detail below, we respectfully request that the Court terminate Mr. Mack's supervised release.

---

[1]    In May 2020, Mr. Mack was transferred from FCI Berlin, in Berlin, New Hampshire, to a half-way house in New York City, and was released from custody in November 2020.

[2]    On two occasions, Mr. Mack tested positive for marijuana use, but he quickly addressed his lapse through continued treatment programs which he completed successfully. He has not had any other issues while on supervised release.

The Honorable Kimba M. Wood
June 27, 2023
Page 2

We have conferred with the Probation Department and the government and neither has an objection to Mr. Mack's supervision being terminated at this time.

### Guilty Plea and Sentence

Mr. Mack pleaded guilty to one count of conspiracy to distribute narcotics in violation of 21 U.S.C. § 841(b)(1)(B) on September 2, 2016, and was sentenced on December 5, 2017 to the statutory minimum of five years imprisonment and four years of supervised release. Mr. Mack's term of supervision is set to conclude in November 2024.

### Mr. Mack's Accomplishments While in Prison and on Supervised Release

In every respect, Mr. Mack has made great strides since his arrest in 2016.

As the Court may recall from sentencing, when Mr. Mack was arrested for his role in a narcotics conspiracy, he carried with him a complicated and tragic personal history. He quickly accepted responsibility for his actions and was the first to plead guilty in the case. *United States v. Mack*, No. 16-cr-311-KMW (S.D.N.Y. Sep. 2, 2016), Tr. of Plea, Sep. 2, 2016, ECF No. 79, at 11: 11-16. He never tried to excuse his conduct and directed all the blame to himself despite myriad factors – totally beyond his control – that contributed to his poor decisions. As detailed in his Sentencing Memorandum, "drugs and tragedy were constant features of his life from the very beginning." Sentencing Mem. of Raheem Mack at 2, ECF No. 277. Among other trauma he endured throughout his childhood, Mr. Mack's mother was addicted to drugs and alcohol; his father was murdered when he was twelve years old; he was often abused by his mother and her steady stream of boyfriends, one of whom would sometimes banish him from home, leaving young Raheem to fend for himself on the streets until he was allowed back in the house; he spent time in and out of overcrowded and unsanitary homeless shelters or in the custody of one of his sisters whose home was also sadly dysfunctional; he struggled with learning disabilities and chronic absence from school due to poverty and the lack of stability in his home life; finally, he ultimately dropped out of school and turned to drugs and alcohol in an effort to dull the pain that surrounded him and pervaded his inner life. *See id.* at 1-9.

None of the serious hardships he faced as a child and teenager, however, could strip Mr. Mack of his innate goodness. As Your Honor commented at his sentencing, Mr. Mack is "a very sensitive, caring person" – characteristics that are "somewhat unusual" for the Court to observe when an individual comes before it. Tr. of Sentencing, Dec. 5, 2017, ECF No. 297 at 9: 3-5. Indeed, Mr. Mack regularly supported friends by babysitting their children without pay. A former girlfriend broke down crying when the undersigned asked her how Mr. Mack's pretrial detention was affecting her, saying her nieces and nephews keep asking when "Uncle Raheem" was coming home. Sentencing Mem., at 9. Mr. Mack was also employed part-time at a clothing store in the Bronx for two years before his arrest. *Id.* at 8-9.

The Honorable Kimba M. Wood
June 27, 2023
Page 3

During his incarceration, Mr. Mack accomplished a great deal. While at the MDC, he completed a drug rehabilitation program, *see* Exhibit E to Sentencing Mem., ECF 275, and voluntarily reenrolled in the program (which he again completed) to ensure he would receive additional support, Sentencing Mem. at 25. He attended a GED class and when the class was suspended because there was no teacher available, Mr. Mack studied fervently from a GED test-prep book. *Id.* at 26. He also began reading as many books as he could and completed other classes offered at the MDC. The first time Mr. Mack sat for his GED exam he failed by one point, but he remains committed to retaking the exam and earning his GED. While incarcerated in New Hampshire, a very long distance from his home, he did his best to maintain his relationships with family and friends in New York through phone calls, made possible by friends who helped him pay for the phone lines, and occasional in-person visits. Even so, given the distance, his mother was able to visit him only once during his post-sentencing incarceration.

Mr. Mack wrote to the Court prior to sentencing expressing his commitment to "make smarter choices" and emerge from prison as a more "focused positive individual." He described his aspirations to start a family and "be a leader" for his children, guiding them to "be better than [him]." He wrote about his plans to use his passion for fixing things to secure a rewarding and steady means of employment. *See* Ex. F to Sen. Mem., ECF 275. As Your Honor noted at sentencing, Mr. Mack "show[ed] at the MDC that [he] ha[s] the ability to do well if [he] choose[s] to do that." Tr. of Sentencing, at 9: 5-7.

Mr. Mack has lived up to his promise. Upon his release from custody in November 2020, Mr. Mack immediately reconnected with his family and became a full-time home health aide for his ailing mother. He was able to receive compensation for this work through the New York State Consumer Directed Personal Assistance Program. After the Court and Probation Officer Fountain encouraged Mr. Mack to find additional employment that would have more opportunity for growth, he began working for a construction company where he performs demolition work throughout the city. He has maintained this job on top of continuing to care for his mother – essentially keeping two full time jobs. This past August, he and his girlfriend welcomed their son to the world. Mr. Mack is the most loving of parents; he thinks about his son incessantly, nurtures him in every way imaginable, and cherishes each moment of fatherhood. After years of helping care for his friends' young children, raising his son is Mr. Mack's greatest joy and the focal point of his life. He and his family maintain a stable residence on Honeywell Avenue in the Bronx.

### Ample Grounds Justify Early Termination

A court "at any time after the expiration of one year of supervised release" and upon consideration of the factors set forth in the identified provisions of 18 U.S.C. § 3553(a), may terminate a term of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The Second Circuit has also clarified that so long as a court considers the relevant § 3553(a) factors, "there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *United States v. Parisi*, 821 F.3d

The Honorable Kimba M. Wood
June 27, 2023
Page 4

343, 347 (2d Cir. 2016) (per curiam). The statute is "understandably broad and implicitly defer[s] to the discretion of the [sentencing] Court." *United States v. Hutchinson*, 577 F. Supp. 3d 134, 134 (E.D.N.Y. 2021). That courts are afforded broad discretion to terminate supervised release is consistent with the Supreme Court's characterization of supervised release as a means to "fulfill[] *rehabilitative* ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (emphasis added); *accord United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), *superseded by statute on other grounds as recognized in United States v. Smith*, 949 F.3d 60, 64 (2d Cir. 2020) ("Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.").

Sound policy reasons favor early termination where supervisees' conduct suggests that they can succeed without oversight from the court. In fact, the Sentencing Guidelines "encourage" courts to exercise their authority to terminate supervised release early "in appropriate cases." U.S.S.G. § 5D1.2, Comment, n.5. The Judicial Conference has also encouraged courts to terminate supervised release in appropriate cases. In 2003, the Judicial Conference approved a policy establishing "a presumption in favor of recommending early termination" for supervisees after the first eighteen months if they are not "career violent and/or drug offenders, sex offenders, or terrorists," if they "present no identified risk to the public or victims," and if they are "free from any moderate or high severity violations." Guide to Judiciary Policy, Vol. 8E, Ch. 3 § 380.10(g). The Judicial Conference identified the following criteria for assessing eligibility for early termination: "(1) stable community reintegration (e.g., residence, family, employment); (2) progressive strides toward supervision objectives and in compliance with all conditions of supervision; (3) no aggravated role in the offense of conviction, particularly large drug or fraud offenses; (4) no history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence); (5) no recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct; (6) no recent evidence of alcohol or drug abuse; (7) no recent psychiatric episodes; (8) no identifiable risk to the safety of any identifiable victim; and (9) no identifiable risk to public safety based on the Risk Prediction Index (RPI)." *Id.*[3]

Finally, the Southern District of New York's March 5, 2018 *Policy of Early Termination* states: "[t]he appropriateness of early termination should be based on the

---

[3] Early termination of supervised release also serves to reduce expenditures in the Probation Department. A September 24, 2013 study by the Judicial Conference showed that early termination of supervised release for low-risk offenders "not only saves money, it does so without compromising public safety." *See* Early Termination of Supervision Cost-Effective and Safe (Sept. 24, 2013), *available at* https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-costeffective-and-safe. *See generally*, *United States v. Trotter*, 321 F. Supp. 3d 337, 344-60 (E.D.N.Y. 2018) (detailing the history of federal supervised release and arguing that § 3583(e)(1) should be used more often.)

The Honorable Kimba M. Wood
June 27, 2023
Page 5

releasee's compliance with all conditions of supervision and overall progress in meeting supervision objectives or making progressive strides toward . . . stable community reintegration (e.g. residence, family, employment, health, social networks) during the period of supervision and beyond."[4]

In Mr. Mack's case, the factors identified in § 3553(a), by the Judicial Conference, and by this District's policy statement weigh strongly in favor of early termination.

*First*, as detailed above, Mr. Mack has successfully reintegrated into society. He has a steady job through which he is supporting his family and gaining valuable skills in the construction industry. He has close family ties. He continues to care for his mother and is a doting father for his young son. He has complied with the conditions of supervised release, including continuing to abstain from drugs.[5] And he has completed more than half of his term of supervised release. *See United States v. Rentas*, 573 F. Supp. 2d 801, 802 (S.D.N.Y. 2008) (granting motion where defendant had secured employment, successfully completed drug program, had no contacts with law enforcement, and got married); *United States v. Erskine*, No. 05 Cr. 1234 (DC), 2021 WL 861270, at *2 (S.D.N.Y., Mar. 8, 2021) (granting motion opposed by government and Probation Department where defendant had "taken considerable strides in reintegrating into his community through employment and service to his family" and was almost half-way through his term); *Hutchinson*, 577 F. Supp. 3d, at 134 (granting § 3583(e)(1) motion where the defendant had reintegrated into society and achieved objective of supervised release).

*Second*, Mr. Mack has been sufficiently punished. Five years in prison (minus good time) is a substantial term, especially during one's formative years. Mr. Mack was between the ages of twenty-one and twenty-six during his term of incarceration. After being transferred from the MDC Brooklyn to a facility in Northern New Hampshire, it became very difficult for Mr. Mack's loved ones to visit him. Indeed, he only saw his mother (who is disabled) once during those years when some of his close friends gave her a ride there and back. While Mr. Mack used his time incarcerated productively, that time away from his family and community has no doubt set Mr. Mack behind his peers and is a significant portion of his youth that he cannot get back.

*Third*, continued supervision is certainly not necessary to "protect the public." 18 U.S.C. § 3553(a)(2)(C). Mr. Mack's drug offense did not involve violence and he is not a violent person; on the contrary, he is gentle and kind. *See United States v. Thomas*, 346 F. Supp. 3d 326, 335 (E.D.N.Y. 2018) (granting motion where defendant did not commit any

---

[4] *Available at* https://images.law.com/contrib/content/uploads/documents/389/134551/SR-Report-4062021.pdf, p. 14.

[5] Again, apart from the positive marijuana tests, which Mr. Mack regrets and quickly addressed to the satisfaction of the Probation Department, he has had no other issues.

5

The Honorable Kimba M. Wood
June 27, 2023
Page 6

further crimes, was working, and "[w]ith support of friends and family [was] likely to lead a productive, law-abiding life"); *Trotter*, 321 F. Supp. 3d, at 365 (same).

*Fourth*, further supervision is not needed to provide Mr. Mack with education or vocational training. He is employed more than full-time, and while certainly he could benefit from additional education and building new job skills, these are pursuits he is fully capable of undertaking on his own when his family and work commitments allow. While the resources of the Probation Department can be helpful in this regard, they are not necessary in Mr. Mack's case.

*Finally*, understanding all too well the havoc that drug use wreaks on individuals, their families, and communities, Mr. Mack is absolutely committed to staying far away from drugs. He will seek additional support should he feel that it is needed at any point in the future, just like he did in prison, where he voluntarily enrolled in a second round of a substance abuse rehabilitation program. Therefore, oversight by the Court and the criminal justice system is no longer necessary to ensure Mr. Mack's continued success.

* * *

In sum, Mr. Mack's conduct while incarcerated and on supervised release has been exemplary. He is fully rehabilitated. Early termination is therefore both appropriate and fair.

We appreciate the Court's consideration.

Respectfully submitted,

/s/
Noam Biale
Raphael A. Friedman

*Attorneys for Raheem Mack*

cc:  AUSA Andrew C. Adams (via ECF)
     US Probation Officer Patrick Fountain (via email)

*The defendant's supervised release is terminated.*

SO ORDERED: N.Y., N.Y. 7/5/23

*Kimba M. Wood*
KIMBA M. WOOD
U.S.D.J.